UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

IN RE SEPTEMBER 11 LITIGATION

IN RE SEPTEMBER 11 PROPERTY DAMAGE AND BUSINESS LOSS LITIGATION

21 MC 97 (AKH)
21 MC 101 (AKH)

---------------------------------------------------------------- X

**MEMORANDUM OF LAW IN SUPPORT OF THE CROSS-MOTION BY WTCP CROSS-CLAIM PLAINTIFFS TO SEVER AND STAY CLAIMS FOR PUNITIVE DAMAGES OR, IN THE ALTERNATIVE, BIFURCATE ALL ACTIONS IN WHICH PLAINTIFFS SEEK PUNITIVE DAMAGES, ORDER A SEPARATE TRIAL FOR THE PUNITIVE DAMAGES CLAIMS, AND DEFER ENFORCEMENT OF ANY JUDGMENTS FOR PUNITIVE DAMAGES**

Richard A. Williamson, Esq. (RW-3033)
FLEMMING ZULACK WILLIAMSON ZAUDERER LLP
Counsel for WTCP Cross-Claim Plaintiffs
World Trade Center Properties LLC,
1 World Trade Center LLC,
2 World Trade Center LLC,
4 World Trade Center LLC,
5 World Trade Center LLC, and
7 World Trade Company, L.P.
One Liberty Plaza
New York, New York 10006
Tel: (212) 412-9500
Fax: (212) 964-9200

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .............................................................. ii-iv

PRELIMINARY STATEMENT .............................................................. 1

ARGUMENT .............................................................. 5

SINCE THE FUNDS AVAILABLE FOR COMPENSATION OF DAMAGES IN THESE ACTIONS ARE LIMITED, ANY DETERMINATION AND POSSIBLE PAYMENT OF PUNITIVE DAMAGES SHOULD BE DEFERRED.................. 5

A. Deferring Punitive Damages Is Consistent With The Goals Of The ATSSSA And With The Limited Fund.......................................... 5

B. In Other Limited Fund Contexts Punitive Damages Are Deferred............ 7

C. The Preferred Practice Within The Second Circuit Is To Bifurcate And Sever Issues Relating To Punitive Damages.............................. 12

CONCLUSION .............................................................. 14

## TABLE OF AUTHORITIES

**Federal Cases** **Page(s)**

*A.I.A. Holdings, S.A. v. Lehman Bros. Inc.*, No. 97 Civ. 4978 (LMM), 2002 WL 31655287 (S.D.N.Y. Nov. 21, 2002) ........ 13

*Canada Life Assurance Co. v. Converium Ruckversicherung (Deutschland) AG*, 335 F.3d 52 (2d Cir. 2003) ........ 6, 7

*City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981) ........ 6

*Dunn v. Hovic*, 1 F.3d 1371 (3d Cir. 1993) ........ 9

*Goodrich Corp. v. Winterthur Intern. Am. Ins. Co.*, 2002 WL 31833646 (N.D. Ohio June 17, 2002) ........ 5

*Guidi v. Inter-Continental Hotels Corp.*, No. 95 Civ. 9006 (LAP), 2003 WL 1846864 (S.D.N.Y. Apr. 8, 2003) ........ 12

*Hamm v. Potamkin*, No. 98 Civ. 7425 (RWS), 1999 WL 249721 (S.D.N.Y. Apr. 28, 1999) ........ 13

*In re A.H. Robins Co., Inc.*, 89 B.R. 555 (E.D. Va. 1988) ........ 11

*In re Agent Orange Product Liability Litigation MDL No. 381*, 100 F.R.D. 718 (E.D.N.Y. 1983) *aff'd*, 818 F.2d 145 (2d Cir. 1987) ........ 10

*In re Asbestos Prods. Liab. Litig. (No. VI)*, Civ. A. No. MDL 875, 1996 WL 539589 (E.D. Pa. Sept. 16, 1996) ........ 7

*In re Collins*, 233 F.3d 809 (3d Cir. 2000) ........ 8

*In re Johns-Manville Corp.*, 68 B.R. 618 (Bankr. S.D.N.Y. 1986) *aff'd*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd sub nom, Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988) ........ 10-11

*In re New York Asbestos Litigation*, 145 F.R.D. 644 (S.D.N.Y. 1993) ........ 12

*In re Patenaude*, 210 F.3d 135 (3d Cir. 2000) ........ 8

*In re WTC Disaster Site (McNally)*, 414 F.3d 352 (2d Cir. 2005) ........ 6

*Matter of Colin*, 44 B.R. 806 (Bankr. S.D.N.Y. 1984) ........ 11

*North Dakota Fair Hous. Council, Inc. v. Allen*, 298 F. Supp. 2d 897 (D. N.D. 2004) ........ 13-14

*Queenie, Ltd. v. Nygard Intern.*, 321 F.3d 282 (2d Cir. 2003) ........ 13

*Rotello v. Clayton Homes of Del., Inc.*, No. 303 CV-573, 2006 WL 842931 (E.D. Tenn. Mar. 28, 2006) ........ 13

*Simpson v. Pittsburgh Corning Corp.*, 901 F.2d 277 (2d Cir. 1990) ........ 13

*Smith v. Lightning Bolt Prod., Inc.*, 861 F.2d 363 (2d Cir. 1988) ........ 12, 13

*Union Carbide Corp. v. Montell*, 28 F. Supp. 2d 833 (S.D.N.Y. 1998) ........ 14

**State Cases**

*In re New York City Asbestos Litig.*, No. 40000/88, Order (N.Y. Sup. Ct. Dec. 19, 2002) ........ 8-9

*In re New York City Asbestos Litig.*, No. 40000/88, Amended Case Management Order (N.Y. Sup. Ct. Feb. 19, 2003) ........ 9

*Keene Corp. v. Levin*, 623 A.2d 662 (Md. 1993) ........ 9

*W.R. Grace & Co.-Conn. v. Waters*, 638 So.2d 502 (Fla. 1994) ........ 13

**Federal Statutes & Rules**

Air Transportation Safety and System Stabilization Act,
Pub. L. No. 107-42, 115 Stat. 230 (2001), codified as amended
at 49 U.S.C. § 40101 note .......... 2

Fed. R. Civ. P. 23(b) .......... 9, 10

Fed. R. Civ. P. 42 .......... 12

**Other Authorities**

A. MILLER, AN OVERVIEW OF FEDERAL CLASS ACTIONS:
PAST, PRESENT AND FUTURE (1977) .......... 10

## PRELIMINARY STATEMENT

Cross-claim plaintiffs World Trade Center Properties LLC, 1 World Trade Center LLC, 2 World Trade Center LLC, 4 World Trade Center LLC, 5 World Trade Center LLC, and 7 World Trade Company, L.P. (collectively "WTCP Cross-Claim Plaintiffs"), by their attorneys, Flemming Zulack Williamson Zauderer LLP, respectfully submit this memorandum of law in support of their cross-motion to sever and stay claims for punitive damages or, in the alternative, bifurcate all actions in which plaintiffs seek punitive damages, order a separate trial for the punitive damages claims, and defer enforcement of any judgments for punitive damages.

The WTCP Cross-Claim Plaintiffs do not address herein the issue of whether punitive damages are recoverable from the Aviation Defendants that is raised in various pending motions among Aviation Defendants[1] and certain other Plaintiffs.[2] Rather, WTCP Cross-Claim Plaintiffs cross-move for an order that, in the event any punitive damages claims survive these motions, this Court should (i) sever and stay these claims until all claims against the Aviation Defendants for compensatory damages have been finally disposed of; or in the alternative, (ii) bifurcate all actions in which plaintiffs seek punitive damages, order a separate trial for the punitive damages claims, and defer enforcement of any judgments for punitive damages until all judgments for compensatory damages have been paid in full or are otherwise finally resolved.

---

[1] "Aviation Defendants" includes all defendant airlines, airport operators, security companies and The Boeing Company.

[2] "Plaintiffs" refers to all plaintiffs, including the WTCP Cross-Claim Plaintiffs, in the actions under the 21 MC 97 and/or 21 MC 101 dockets (the "Actions") asserting wrongful death, bodily injury, property damage or business interruption loss claims, among other claims.

This motion is necessitated by the Air Transportation Safety and System Stabilization Act ("ATSSSA") -- which limits the Aviation Defendants' liability to an amount no greater than the limits of liability insurance coverage maintained by the Aviation Defendants[3] -- and the fact that the total amount of claims asserted by Plaintiffs greatly exceeds the total amount of the Aviation Defendants' liability insurance disclosed to date. The relief this motion seeks is needed to prevent the inequity that will result from certain other Plaintiffs receiving punitive damages -- a measure of damages above and beyond what is necessary to fully compensate those Plaintiffs -- that would deplete the available insurance funds and hinder the WTCP Cross-Claim Plaintiffs and others from recovering their fair share of compensatory damages. These compensatory damages are needed to help the WTCP Cross-Claim Plaintiffs carry on the work of rebuilding the World Trade Center. (*See* ATSSSA, § 408(a)(2), which mandates that those with a property interest in the World Trade Center rebuild, or assist in the rebuilding of, the World Trade Center.)

The looming likelihood of a shortfall of funds available to pay all pending property damage, business loss and subrogation claims is evident from an analysis of damages claims asserted to date and insurance disclosures that have been provided thus far by the Aviation

---

[3] The ATSSSA provides, in pertinent part:

> Sec. 408. Limitation on liability.
> (a) In general.--
> (1) Liability limited to insurance coverage.--Notwithstanding any other provision of law, liability for all claims, whether for compensatory or punitive damages or for contribution or indemnity, arising from the terrorist-related aircraft crashes of September 11, 2001, against an air carrier, aircraft manufacturer, airport sponsor, or person with a property interest in the World Trade Center, on September 11, 2001, whether fee simple, leasehold or easement, direct or indirect, or their directors, officers, employees, or agents, shall not be in an amount greater than the limits of liability insurance coverage maintained by that air carrier, aircraft manufacturer, airport sponsor, or person.

ATSSSA, §408(a). *See* Pub. L. No. 107-42, 115 Stat. 230 (2001), codified as amended at 49 U.S.C. § 40101 note.

Defendants. It should come as no surprise that the damages incurred as a result of the destruction of approximately 12 million square feet of revenue-generating office space within the World Trade Center site, and the loss of additional millions of square feet of commercial space, totals many billions of dollars. After all, the destroyed properties contained more office space than is contained in many cities.

According to approximately 926 Damage Disclosure Forms ("DDFs") provided to WTCP Cross-Claim Plaintiffs, the amounts claimed, including the claims of the WTCP Cross-Claim Plaintiffs themselves, total approximately $18.44 billion: $4.61 billion in claims paid by the insurance company subrogation plaintiffs to their insureds, for which these insurers are seeking refunds through their property damages lawsuits (plus any amounts still to be paid after the dates of the DDFs), plus $13.83 billion (plus billions of dollars in pre-judgment interest) for uninsured property losses claimed by, among others, the WTCP Cross-Claim Plaintiffs. This total of more than $18 billion (plus billions more in pre-judgment interest) does not even include any of the Wrongful Death/Personal Injury compensatory damages claims. *See* the analysis in the accompanying Declaration Of Wolfgang A. Dase, Esq. in Support of the Cross-Motion by WTCP Cross-Claim Plaintiffs to Sever and Stay Claims for Punitive Damages or, in the Alternative, Bifurcate All Actions in Which Plaintiffs Seek Punitive Damages, Order a Separate Trial for the Punitive Damages Claims, and Defer Enforcement of Any Judgments For Punitive Damages executed on May 25, 2007 (the "Dase Decl."), ¶3.

The Aviation Defendants, however, failed to maintain sufficient insurance to cover the catastrophic events of September 11. According to insurance information provided by the Aviation Defendants to date, WTCP Cross-Claim Plaintiffs have calculated that the total of all of the Aviation Defendants' liability insurance coverage (discovered to date) that may

ultimately be available to pay for Plaintiffs' claims is no more than approximately $13 billion.[4] *See* Dase Decl. ¶4.

Moreover, the foregoing insurance amount does not reflect reductions in the Aviation Defendants' liability insurance limits due to the Aviation Defendants' past settlements of various wrongful death actions in the 21 MC 97 docket. It also does not reflect any reductions in coverage limits due to payments made by the Aviation Defendants' insurers for claims not related to the terrorist-related aircraft crashes of September 11 or, where applicable, erosion of the policy limits because of defense costs, expenses or disbursements paid by insurers. *See* Dase Decl. ¶5.

These calculations demonstrate that there almost certainly will not be enough money available to pay in full all the compensatory damages that may be assessed in these matters -- let alone any punitive damages. Under these circumstances, it would be inappropriate for the Court to permit certain plaintiffs to collect punitive damages at the expense of the ability of other plaintiffs to recover their compensatory damages. To ensure just compensation for all parties, it is imperative that punitive damages claims, as well as their payment, be severed and stayed or, in the alternative, that all actions in which plaintiffs seek punitive damages be

---

4 This amount is an estimate, calculated by the WTCP Cross-Claim Plaintiffs on the basis of the incomplete information contained in the hodgepodge of insurance policies, redacted policies, policy excerpts and other insurance-related information made available to date by the following Aviation Defendants: AMR Corp./American Airlines, Inc., Argenbright Security, Inc., The Boeing Company, Colgan Air, Inc., Delta Air Lines, Inc., Globe Aviation Services Corp., Huntleigh U.S.A. Corp., ICTS International NV, Massachusetts Port Authority, United Air Lines, Inc./UAL Corp. and US Airways, Inc. To date, Continental Airlines has not responded at all to the WTCP Cross-Claim Plaintiffs' January 17, 2007 insurance discovery requests, and to our knowledge has not provided any of its insurance coverage information or documents. *See* Dase Decl. ¶4. The inability of the WTCP Cross-Claim Plaintiffs to obtain full and complete insurance disclosures from all Aviation Defendants was brought to this Court's attention at the last conference on March 22, 2007. The WTCP Cross-Claim Plaintiffs are continuing their efforts to obtain disclosures of the complete universe of the Aviation Defendants' available insurance.

bifurcated with payment of punitive damages deferred until all judgments for compensatory damages have been paid in full.

## ARGUMENT

## SINCE THE FUNDS AVAILABLE FOR COMPENSATION OF DAMAGES IN THESE ACTIONS ARE LIMITED, ANY DETERMINATION AND POSSIBLE PAYMENT OF PUNITIVE DAMAGES SHOULD BE DEFERRED

We show below that (i) severing, staying and deferring the determination of how much, if any, should be paid in punitive damages by the Aviation Defendants, or, in the alternative, bifurcating the actions and deferring the payment of any such punitive damages until all compensatory damages have been paid in full, is consistent with ATSSSA's purpose to ensure that every injured plaintiff receive just compensation; (ii) in other limited fund contexts punitive damages claims have been and are consistently severed and stayed, or bifurcated; and (iii) this Court has the authority, and it is the preferred practice within the Second Circuit, to bifurcate and sever issues relating to punitive damages and the punitive damages claims themselves as well.

### A. Deferring Punitive Damages Is Consistent With The Goals Of The ATSSSA And With The Limited Fund

As this Court is aware, ATSSSA limits the recovery of plaintiffs against an Aviation Defendant for any claim arising out of, resulting from or relating to the September 11, 2001 terrorist attacks to the limits of the Aviation Defendant's insurance coverage on that date. Therefore, by federal mandate, any damages awarded to plaintiffs will come from a limited fund, comprised of the cumulative amount of total insurance coverage available for each Aviation Defendant. *Goodrich Corp. v. Winterthur Intern. Am. Ins. Co.*, 2002 WL 31833646, at *4 n.4 (N.D. Ohio June 17, 2002) ("By capping the total liability for all claims

made against the airline industry, Congress delineated a finite amount of money available for recovery.").

Cognizant of the dual goals of limiting liability and fully compensating injured parties for their losses, Congress sought to "ensure consistency and efficiency in resolving the many expected actions arising from the events of September 11." *Canada Life Assurance Co. v. Converium Ruckversicherung (Deutschland) AG*, 335 F.3d 52, 58 (2d Cir. 2003). The vehicle chosen by Congress to achieve fairness and consistency as to damages was the consolidation of all litigation in one court, which would permit the court to manage its docket in a way that would ensure, among other things, that those affected by the events of September 11 will obtain just compensation:

> Requiring a single forum for "all actions brought for any claim . . . resulting from or relating to" the events of September 11 must have as its goal the avoidance of the undesirable effects that litigation of September 11 claims in the various state and federal courts would inevitably produce. These effects might include: . . . *victims or their survivors without any possibility of recovery when the limits of liability have been exhausted in other lawsuits* . . . .

*Id.* at 59 (emphasis added); *see also In re WTC Disaster Site (McNally)*, 414 F.3d 352, 378 (2d Cir. 2005) (same, *quoting Canada Life*). Accordingly, this Court should use all case management tools at its disposal to manage this litigation so that the limited funds available for payment of claims are fairly distributed. One way of doing so is to ensure that the limited funds are not depleted by punitive damage claims until all potential compensatory damages claims are paid.

"Punitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and others from similar extreme conduct." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 266-67 (1981). Yet, punitive awards here could preclude many plaintiffs

from recovering their compensatory damages and thereby violate the Congressional intent embodied in the ATSSSA as discussed above. We respectfully submit that this Court must act to actively and fairly manage the limited fund to prevent that from happening.

By this cross-motion, WTCP Cross-Claim Plaintiffs ask this Court to ensure that all plaintiffs first receive payment in full of their compensatory damages before any plaintiff begins to receive punitive damages in addition to compensatory damages. With respect to the efforts of the wrongful death plaintiffs' counsel to obtain punitive damages in these actions, the only way to "ensure consistency and efficiency," as the *Canada Life* court required -- and enable all injured plaintiffs to receive their rightful share of the limited funds available in these cases -- is to defer adjudication relating to the amount of, and the payment of, any punitive damages. *Canada Life Assurance Co.*, 335 F.3d at 58. This Court has the discretion to and should do so.

**B. In Other Limited Fund Contexts <u>Punitive Damages Are Deferred</u>**

In analogous situations, courts across the country have routinely decided that in limited fund cases, priorities must be established, and punitive damages deferred, in order to ensure just compensation to victims for their compensatory damages.

**Mass Torts**

In mass tort litigation, as companies have gone bankrupt and the monies available to pay damages have become limited, courts have routinely deferred punitive damages. For instance, in the asbestos Multidistrict Litigation process, where asbestos-related personal injury lawsuits were transferred to the Eastern District of Pennsylvania for pre-trial management by the court, *see In re Asbestos Prods. Liab. Litig. (No. VI)*, Civ. A. No. MDL 875, 1996 WL 539589, at *1 (E.D. Pa. Sept. 16, 1996), Judge Charles Weiner routinely

severed punitive damages claims from compensatory claims when, after the conclusion of the pretrial procedures, he remanded the cases to the districts from which they were originally transferred for the compensatory damages claims to proceed to trial. *See In re Patenaude*, 210 F.3d 135, 140 n.3 (3d Cir. 2000) (noting the court's "practice when it does remand cases of severing and retaining jurisdiction over punitive damages claims.").

This practice was ratified by the Third Circuit in *In re Collins*, 233 F.3d 809 (3d Cir. 2000), wherein the court held that severing punitive claims was proper because, *inter alia*, "[i]t is responsible public policy to give priority to compensatory claims over exemplary punitive damage windfalls; this prudent conservation more than vindicates the Panel's decision to withhold punitive damage claims on remand. . . . The continued hemorrhaging of available funds deprives current and future victims of rightful compensation." *Id.* at 812. The court in *Collins* also noted that "although a demand for punitive damages does not stand alone, it is not simply a component of a claim inseparable from the whole. . . . A request for punitive damages is similar to a derivative claim, such as for loss of consortium, and may properly be characterized as a separate but dependent claim for relief that must be supported by independent allegations and proof." *Id.* at 811 (internal quotations and citations omitted).

Similarly, in New York, more than 20,000 asbestos-related personal injury and wrongful death cases were consolidated in the Supreme Court of the State of New York (All Counties Within The City of New York) for pre-trial management. *See In re New York City Asbestos Litig.*, No. 40000/88, Order (N.Y. Sup. Ct. Dec. 19, 2002). *See* Dase Decl. ¶7(a) and copy attached thereto. The court in these consolidated cases recognized that recoveries by certain plaintiffs "deplete the funds needed to compensate present and future claimants with serious illnesses, and resources are dwindling as the elephantine mass of asbestos cases nationwide drives large numbers of potentially culpable parties into bankruptcy." *Id.* at 1-2

(internal quotation and citation omitted). Accordingly, the court established a "deferred docket" of certain cases, *id.* at 2-3, and decided to sever punitive damages -- providing in its case management order that "counts for punitive damages are deferred until such time as the Court deems otherwise, upon notice and hearing." *In re New York City Asbestos Litig.*, No. 40000/88, Amended Case Mgmt. Order, at 46 (N.Y. Sup. Ct. Feb. 19, 2003). *See* Dase Decl. ¶7(b) and copy attached thereto. *See also Dunn v. Hovic*, 1 F.3d 1371, 1400 n.13 (3d Cir. 1993) (J. Weis, dissenting) (in background discussion on whether punitive damages should be permissible at all, describing Maryland trial court order directing that payment of punitive awards for approximately 8,500 plaintiffs in a consolidated proceeding be deferred until compensatory damages have been satisfied), and *Keene Corp. v. Levin*, 623 A.2d 662, 663 (Md. 1993) (confirming that Judge Marshall A. Levin, of the Circuit Court for Baltimore City, "provided that the payment of punitive damages [in 8,500 consolidated personal injury asbestos cases] . . . [is] hereby deferred until all Baltimore City plaintiffs' compensatory damages are paid") (internal quotations omitted).

**Other Contexts**

In other contexts as well, our system of law strives to address the problem of what happens when many legitimate plaintiffs seek a share of a limited fund. Thus, for example, Fed. R. Civ. P. 23(b) provides that an action may be maintained as a class action if, *inter alia*,

> (1) the prosecution of separate actions by or against individual members of the class would create a risk of . . .
>
> > (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

"The rationale for using (b)(1)(B) in mass tort litigation is that of the 'limited fund.'. . . 'The paradigm Rule 23(b)(1)(B) case is one in which there are multiple claimants to a limited fund . . . and there is a risk that if litigants are allowed to proceed on an individual basis those who sue first will deplete the fund and leave nothing for latecomers.'" *In re Agent Orange Product Liability Litigation MDL No. 381*, 100 F.R.D. 718, 725 (E.D.N.Y. 1983) (J. Weinstein) (*quoting* A. MILLER, AN OVERVIEW OF FEDERAL CLASS ACTIONS: PAST, PRESENT AND FUTURE 45 (1977)), *aff'd*, 818 F.2d 145 (2d Cir. 1987).

As Judge Weinstein explained,

> As applied to mass tort litigation, the "limited fund" is generally construed to be the assets of the defendants as extended by insurance coverage and the assets of the insurers. The "fund" may also have a more limited bearing, as where the first judgments may take all of a limited punitive damage award. If earlier claimants proceed on an individual basis, it is urged, they will deplete the defendants' assets and leave nothing for later claimants.

*Id.* Concerned about "protecting a large group of war veterans against the possibility that after possibly winning a long-sought after victory in the courts, they will not be able to collect on a judgment in their favor," *id.* at 726, Judge Weinstein, in the *Agent Orange* case, allowed (b)(1) certification on the issue of punitive damages only, finding that "there is a substantial probability that limited punitive damages may be allowed. If they are, it would be equitable to share this portion of the possible award among all plaintiffs who ultimately recover compensatory damages." *Id.* at 728.

Bankruptcy is another circumstance in which the constraints of a limited fund must be confronted. Here, it has been recognized that to "allow recovery of punitive damages, of course, would be to risk the depletion of Trust assets to the benefit of known victims at the expense of future claimants. Such a result is inequitable on its face." *In re Johns-Manville*

*Corp.*, 68 B.R. 618, 627 (Bankr. S.D.N.Y. 1986) (Bankruptcy court has authority to enjoin award of punitive damages), *aff'd*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd sub nom.*, *Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988).

In bankruptcy matters punitive awards may be, and often are, subordinated pursuant to certain bankruptcy provisions. *See, e.g., Matter of Colin*, 44 B.R. 806, 808-10 (Bankr. S.D.N.Y. 1984) (granting motion for subordination of punitive damages; "[u]nder the Code, such claims are either relegated to a fourth priority in Chapter 7, pursuant to § 726(a)(4) . . . or they may be subordinated to any other claim on equitable considerations pursuant to § 510(c). . . . [A] claim for punitive damages should not be allowed to share *in pari passu* with other general unsecured creditors for to do so would result in innocent creditors paying for the debtor's alleged misconduct."); *In re A.H. Robins Co., Inc.*, 89 B.R. 555, 559 n.2 (E.D. Va. 1988) (invoking equitable power to distribute punitive damages proportionally, after satisfaction of compensatory damages).

Thus, time and time again, when courts have been confronted with a situation akin to the one here -- plaintiffs competing over a limited fund -- they have developed appropriate mechanisms and approaches to ensure that each plaintiff receives its rightful share of the available funds. Punishing the wrongdoers -- which is the purpose of punitive damages -- cannot and should not be done at the expense of compensating the injured. Therefore, in these matters, severing and deferring adjudication on the issues of whether punitive damages are recoverable, the amounts of any punitive damages, as well as deferring the payment of any punitive damages until all plaintiffs have recovered their compensatory damages is the appropriate and equitable approach.

### C. **The Preferred Practice Within The Second Circuit Is To Bifurcate And Sever Issues Relating To Punitive Damages**

As shown below, not only does this Court have the authority to sever and bifurcate issues relating to punitive damages claims, but it is the preferred practice to do so within the Second Circuit.

> Pursuant to Fed. R. Civ. P. 42,
>
> **(b) Separate Trials**. The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

Thus, bifurcation is authorized when, *inter alia*, "to do so would 'avoid prejudice.'" *Guidi v. Inter-Continental Hotels Corp.*, No. 95 Civ. 9006 (LAP), 2003 WL 1846864, at *2 (S.D.N.Y. Apr. 8, 2003).

The Second Circuit allows district courts broad discretion in determining whether to grant separate trials. *Smith v. Lightning Bolt Prod., Inc.*, 861 F.2d 363, 370 (2d Cir. 1988) ("the district court has broad discretion to order separate trials to avoid delay or prejudice"); *In re New York Asbestos Litigation*, 145 F.R.D. 644, 647 (S.D.N.Y. 1993) (district courts have "broad discretion" to "manage their dockets efficiently by expediting trials and eliminating unnecessary repetition and confusion.") (citing Rule 42).

Moreover, within the Second Circuit, it is the *preferred* practice to bifurcate trials to separate punitive damages claims from other claims:

> [C]ourts should typically postpone trial on the amount of punitive damages until after liability and preliminary damages determinations are completed. As a number of courts within

> the Second Circuit have recognized, it is often preferable to bifurcate trials in order to delay trial as to the amount of an award of punitive damages until the usual issues of liability and compensation have been tried.

*Hamm v. Potamkin*, No. 98 Civ. 7425 (RWS), 1999 WL 249721, at *1 (S.D.N.Y. Apr. 28, 1999) (internal quotations and citations omitted). *See also Queenie, Ltd. v. Nygard Intern.*, 321 F.3d 282, 285 n.1 (2d Cir. 2003) ("an appropriate bifurcation would be to defer the determination of the amount of punitive damages until determinations have been made as to liability, the amount of compensatory damages, and whether to award any punitive damages"); *Simpson v. Pittsburgh Corning Corp.*, 901 F.2d 277, 283 (2d Cir. 1990) ("bifurcation of the amount of punitive damages is the preferred method") (internal quotations and citations omitted); *A.I.A. Holdings, S.A. v. Lehman Bros. Inc.*, No. 97 Civ. 4978 (LMM), 2002 WL 31655287, at *1 (S.D.N.Y. Nov. 21, 2002) (evidence regarding punitive damages should be delayed until after "'the usual issues of liability and compensatory damages have been tried, along with the matter of whether the defendant's conduct warrants any award of punitive damages at all'") (*quoting Smith v. Lightening Bolt Prods., Inc.*, 861 F.2d 363, 374 (2d Cir. 1988)).

This preference for bifurcation has been followed by numerous courts around the country. *See, e.g., W.R. Grace & Co.-Conn. v. Waters*, 638 So.2d 502, 506 (Fla. 1994) ("henceforth trial courts, when presented with a timely motion, should bifurcate the determination of the amount of punitive damages from the remaining issues at trial"); *Rotello v. Clayton Homes of Del., Inc.*, No. 303 CV-573, 2006 WL 842931, at *1 (E.D. Tenn. Mar. 28, 2006) ("a trial court must bifurcate the trial, and during the first phase, the finder of fact should determine liability for and the amount of compensatory damages, but only determine liability for punitive damages"); *North Dakota Fair Hous. Council, Inc. v. Allen*, 298 F.

Supp. 2d 897, 899 (D. N.D. 2004) ("request for bifurcation of the punitive damage claim is granted.").

Given that the compensatory damages sought by plaintiffs in these actions deplete the limited funds available for distribution, it would be inappropriate and simply wasteful to adjudicate the amounts of punitive damages before issues relating to liability and amounts of compensatory damages. Judicial economy, and principles of fundamental fairness warrant that this Court take the approach taken in the cases discussed above: sever and hold in abeyance issues relating to the availability of any punitive damages, the amounts of any punitive damages, and when and whether to allow payment of any punitive damages until all other issues are adjudicated and all compensatory damages have been paid in full or the limited fund has been exhausted, whichever occurs first. Compensatory damages should be paid out to all successful plaintiffs before the payment of any punitive damages. An assessment should then be made as to what amount of the limited fund, if any, is left to distribute. At that point, if any funds remain, issues relating to the availability and amounts of punitive damages, as well as how those punitive damages should be distributed "might be resolved by motion or settlement." *See Union Carbide v. Montell*, 28 F. Supp. 2d 833, 837 (S.D.N.Y. 1998).

## CONCLUSION

For all the foregoing reasons, in the event that any plaintiffs are allowed to proceed with their claims for punitive damages as against the Aviation Defendants, we respectfully request that the Court sever and stay all claims for punitive damages until all claims against the Aviation Defendants for compensatory damages have been finally disposed of and satisfied, or, in the alternative, bifurcate all actions in which plaintiffs seek punitive

damages, order a separate trial for the punitive damages claims and defer enforcement of them until all judgments for compensatory damages have been paid in full.

Dated: New York, New York
May 25, 2007

**FLEMMING ZULACK**
**WILLIAMSON ZAUDERER LLP**

By: ______________________
Richard A Williamson (RW-3033)
One Liberty Plaza
New York, New York 10006
(212) 412-9500

Counsel for WTCP Cross-Claim Plaintiffs
World Trade Center Properties LLC
1 World Trade Center LLC
2 World Trade Center LLC
4 World Trade Center LLC
5 World Trade Center LLC
7 World Trade Company, L.P.

To: All counsel in 21 MC 97 (AKH) and 21 MC 101 (AKH)